Argued June 29, affirmed September 9, 1955

# SMITH *v.* SMITH

287 P. 2d 572

*Gordon G. Carlson,* of Roseburg, argued the cause for appellant. With him on the brief were Yates, Murphy & Carlson, of Roseburg.

*Kenneth Roberts,* of Portland, argued the cause for respondent. On the brief were Mautz, Souther, Spaulding, Denecke & Kinsey, of Portland.

Before WARNER, Chief Justice, and TOOZE, LUSK, BRAND, LATOURETTE and PERRY, Justices.

BRAND, J.

The plaintiff, Naomi Jean Smith, brought this action for damages against her husband, Leo L. Smith, under the provisions of the Oregon Guest Statute, ORS 30.110. The complaint alleges that the defendant operated an automobile, in which the plaintiff was a passenger, in a grossly negligent manner and in reckless disregard of the rights of the plaintiff. The defendant filed a general demurrer which was sustained. Plaintiff failed to plead further and the action was dismissed.

The sole question presented on this appeal is whether a wife may sue her husband for damages caused by his gross negligence, under the Guest Stat-

ute. The question is new to this jurisdiction, but every phase of this problem has been discussed at great length in scores of judicial decisions, and by many eminent text writers. The weight of authority pro and con has been repeatedly estimated and a repetition of what has been well done would serve no useful purpose.

■ No judicial decisions need be cited for the proposition that at early common law neither spouse could maintain action against the other for either a personal or a property tort, whether it was committed before or during marriage. The common-law rule of nonliability has been universally recognized. See Prosser on Torts, pp 898 and 899; and McCurdy, Torts Between Persons in Domestic Relation, 43 Harv L Rev 1031, et seq; *Brandt v. Keller,* 413 Ill 503, 109 NE2d 729. If then, this action can be maintained, it must be because the common-law rule has been appropriately changed by statute, or should be changed by the court in the exercise of the power to modify ancient rules of common law by reason of changed social conditions, resulting in a recognizable modification of the public policy of the state. In this connection we are cited to a declaration of this court in *Cowgill, Adm'r v. Boock, Adm'r,* 189 Or 282, 218 P2d 445, as follows:

"Whatever may be the early common rule, we should not be bound thereby unless it is supported by reason and logic. The law is not static. It is a progressive science. What may have been a wholesome common law rule a hundred years ago may not be adapted to the changed economic and social conditions of this modern age. In Rozelle v. Rozelle, 281 N.Y. 106, 112, 22 N.E.(2d) 254, 123 A.L.R. 1015, it is said:

" 'The genius of the common law lies in its flexibility and in its adaptability to the changing

nature of human affairs and in its ability to enunciate rights and to provide remedies for wrongs where previously none had been declared.' ''

Again, in the concurring opinion of Justice ROSSMAN, we read:

"* * * Society is not static and conduct is in a continuous state of flux. Mankind is constantly altering the social value it places upon different phases of life. The law must keep pace with life and develop with the expanding enlightenment of the age." 189 Or 282, 302.

Other decisions have recognized the power and occasionally the duty of this court to modify ancient and outmoded rules of the common law under the compulsion of changed economic or social conditions. *Peery v. Fletcher*, 93 Or 43, 182 P 143; *United States F. & G. Co. v. Bramwell*, 108 Or 261, 217 P 332; *Turney v. J. H. Tillman Co.*, 112 Or 122, 228 P 933; *Re Water Rights of Hood River*, 114 Or 112, 227 P 1065.

In the Cowgill case this court exercised the power to which we have referred:

"After a careful consideration of the authorities, we think the general rule—so well established by the authorities—should be modified to allow an unemancipated minor child to maintain an action for damages against his parent for a wilful or malicious personal tort. * * *" 189 Or 282 at 301.

Contrasted with the liberal views expressed in the cases cited, we find frequent recognition of the classic doctrine that the rules of the common law are binding upon the courts in the absence of statute, and that any serious change in the public policy of the state is a matter solely for legislative determination. *Landgraver v. Emanuel Lutheran Charity Board, Inc.* — Or —, 280 P2d 301. Between these apparently conflict-

ing doctrines, (1) the duty to follow, and (2) the right to modify, this court must direct its course with gingerly care.

We shall first consider whether any Oregon statute has conferred upon a wife the right of suit and recovery against her husband for a negligent tort. In this connection we shall make no distinction between cases of ordinary negligence and those involving gross negligence. It can be persuasively argued that there is a real distinction between torts which are based upon negligence, ordinary or gross, on the one hand, and torts involving intentional injury, upon the other. But this court should not establish any rule which would revive the old distinction between gross and ordinary negligence by holding that in the one case a wife may sue her husband, but in the other she cannot. The confusion inherent in the administration of the Oregon Guest Statute should not be extended to other and wider areas. A review of the Constitution and statutes will furnish a profitable background.

The Constitution of Oregon, as adopted in 1857, contained the following provisions:

> "* * * every man shall have remedy by due course of law for injury done him in person, property or reputation." Constitution of Oregon, Article I, § 10.

The same guaranty appears in Article I, § 10 of the present Constitution. The Constitution also provides that:

> "The property and pecuniary rights of every married woman at the time of marriage, or afterwards acquired by gift, devise, or inheritance, shall not be subject to the debts or contracts of the husband; and laws shall be passed providing for the registration of the wife's separate property." Oregon Constitution, Article XV, § 5.

By the Laws of 11 October 1862 it was provided:

> "When a married woman is a party, her husband shall be joined with her, except that;
>
> 1. When the action concerns her separate property she may sue alone.
>
> 2. When the action is between herself and her husband, she may sue or be sued alone; and in no case need she prosecute or defend by a guardian or next friend." General Laws of Oregon (Deady's Code) 1845-1864, ch 1, § 30, p 145.

The law was amended in 1876 to read as follows:

> "When a married woman is a party, her husband shall be joined with her, except that,—
>
> 1. When the action affects her separate property, or when the cause of action is for a wrong committed against her person or character, or is for wages due for her personal services, she may sue or be sued alone;
>
> 2. When the action is between herself and her husband, she may sue or be sued alone; and in no case need she prosecute or defend by a guardian or next friend." 1 Bellinger and Cotton's Anno Codes and Statutes of Oregon 90, Of Parties to Actions, § 30.

This act remained on the books until its repeal by Chapter 144, Laws of 1927, page 161. In 1878 the following statute was enacted:

> "A wife may receive the wages of her personal labor, and maintain an action therefor in her own name, and hold the same in her own right, and she may prosecute and defend all actions at law or in equity, for the preservation and protection of her rights and property as if unmarried." 1 Bellinger and Cotton's Anno Codes and Statutes or Oregon 91, § 31.

This act was also repealed by Chapter 144, Laws of 1927.

The laws of 1862 contained the following provision:

"No action shall abate by the death, marriage or other disability of a party, or by the transfer of any interest therein, if the cause of action survive or continue. In case of the death, marriage, or other disability of a party, the court may, at any time within one year thereafter, on motion, allow the action to be continued by or against his personal representatives or successor in interest." General Laws of Oregon (Deady) 1845-1864, § 37, p. 146.

This law remained upon the books until the enactment of Oregon Revised Statutes. See OCLA, § 1-311. The statute of 11 October 1862 provided that all persons may be witnesses, subject to the exceptions expressed therein. It then continued:

"A husband shall not be examined, for or against his wife, without her consent, nor a wife, for or against her husband, without his consent; nor can either, during the marriage or afterwards, be, without the consent of the other, examined as to any communication made by one to the other during the marriage. But the exception does not apply to a civil action, suit or proceeding, by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other;" General Laws of Oregon (Deady) 1845-1864, § 702, p 325.

This portion of the statute remained on the books in its original form until the enactment of Oregon Revised Statutes. OCLA, § 3-104; and see ORS 44.040.

The law of 13 January 1854 provided:

"A husband and wife may, by their joint deed, convey the real estate of the wife, in like manner as she might do by her separate deed, if she were unmarried * * *." General Laws of Oregon (Deady) 1845-1864, § 2, p 646.

This portion of the statute remained on the books until the adoption of the Oregon Revised Statutes from which it was omitted "as unnecessary in view of the removal of a wife's civil disabilities by OCLA 63-202 [ORS 108.010]". Reviser's Notes, ch 108, p 797. It was, however, impliedly repealed by the Law of 1878; LOL 7049; OL 9758; which was itself expressly repealed by Laws of 1927, ch 144. See *Ellis v. Abbott,* 69 Or 234, 138 P 488.

By the Laws of October 11, 1862, it was provided that:

"If any person entitled to bring an action mentioned in this title * * * be at the time the cause of action accrued * * * a married woman; the time of such disability shall not be a part of the time limited for the commencement of the action * * *." General Laws of Oregon (Deady) 1845-1864, p 143.

By the Laws of 1915, ch 30, the reference to a married woman was eliminated.

Numerous early laws of Oregon were directed at the removal of specific common law disabilities of both husband and wife and many of them remained upon the statute books at the time the alleged cause of action arose in the pending case. The separate ownership by married persons of their property and pecuniary rights was established. Laws of 1878, § 2, p 92; B & C, § 5234; OCLA, § 63-205. See ORS 108.060. Husband or wife could sue the other to recover his or her separate property as if they were unmarried. Laws of 1878, § 3, p 93; OCLA, § 63-209. See ORS 108.080. Conveyances between them were valid. Laws of 1878, § 5, p 93; OCLA, § 63-210. See ORS 108.090. Either might act as attorney in fact for the other. Laws of 1878, § 6, p 93; OCLA, § 63-211. See ORS 108.100.

Neither was liable for the debts of the other except in specified instances. Laws of 1878, § 8, p 93; OCLA, § 63-206. See ORS 108.020. The property and pecuniary rights of married women received separate protection. Laws of 1872, § 1, p 23; Laws of 1878, § 1, p 92; Laws of 1893, § 1, p 170; OCLA, § 63-204. See ORS 108.050. The wife was made liable for her own torts. Laws of 1878, § 4, p 93; B & C, § 5248; OCLA, § 63-208. See ORS 108.030. And she could make contracts and could sue and be sued upon them. Laws of 1878, § 9, p 94; OL 9758 (repealed by Laws 1927, ch 144.) See OCLA, § 63-202. The broad statute removing the wife's civil disabilities was enacted in 1880, and provided as follows:

"All laws which impose or recognize civil disabilities upon a wife which are not imposed or recognized as existing as to the husband are hereby repealed: Provided, that this act shall not confer the right to vote or hold office upon the wife, except as is otherwise provided by law; and for any unjust usurpation of her property or natural rights she shall have the same right to appeal in her own name alone to the courts of law or equity for redress that the husband has." Laws, 1880, § 1, p 6; 2 B & C, § 5250; OCLA, § 63-202.

In 1941 this statute was amended to read as follows:

"All laws which impose or recognize civil disabilities upon a wife which are not imposed or recognized as existing as to the husband hereby are repealed, and all civil rights belonging to the husband not heretofore conferred upon the wife, or which she does not have at common law, hereby are conferred upon her, including, among other things, the right of action for loss of consortium of her husband; and for any unjust usurpation of her property or natural or civil rights she shall have the same right to appeal in her own name alone to

the courts of law or equity for redress that the husband has." Oregon Laws 1941, ch 228, p 356.

Although the Oregon Revised Statutes were enacted subsequent to the date of the alleged negligence of defendant in this case, it is of interest to note that the reviser has eliminated all of the 1941 act which provides that:

"* * * and for any unjust usurpation of her property or natural or civil rights she shall have the same right to appeal in her own name alone to the courts of law or equity for redress that the husband has." Oregon Laws 1941, ch 228, p 356.

A reviser's note reads as follows:

"The OCLA 63-202 [the 1941 act] reference to the wife's right to sue in her own name has been omitted as unnecessary in view of the broad grant in the first part of that section." Reviser's Note, Oregon Revised Statutes, 1953, p 795.

Counsel for the plaintiff relies upon Oregon Constitution Article I, § 10, supra, which guarantees to every man a remedy by due course of law for injury done him in his person, property, or reputation. Their position in this respect is untenable. The word "injury" as used in the Constitution is to be contrasted with the word "damage". It perpetuates the distinction between "damnum" and "injuria". *Thomason v. Seabord Air Line Railway,* 142 NC 318, 55 SE 205; *King v. Lamborn,* 186 F 121, 108 CCA 123; *West Virginia Transp. Co. v. Standard Oil Co.,* 50 WV 611, 40 SE 591; *Scholberg v. Itnyre,* 264 Wis 211, 58 NW2d 698; *Granahan v. Celanese Corp. of America,* 3 NJ 187, 69 A2d 572.

■ Our own court has clearly indicated that the word "injury" is not to be construed as it might be if

found in a workmen's compensation act, or when statutory reference is made to "accidental injury". We have said that the constitutional provision guarantees all "recognized rights". *Perozzi v. Ganiere,* 149 Or 330, 40 P2d 1009; *Noonan v. City of Portland,* 161 Or 213, 249, 88 P2d 808. The Constitution does not guarantee a right of action in every case in which one person suffers damage at the hands of another. *Noonan v. City of Portland,* supra.

■ Article XV, § 5 of the Oregon Constitution, supra, refers only to property and pecuniary rights of a married woman and does not purport to grant any new substantive rights against the husband for tort. The provision upon its face refers to rights of a kind which may be acquired by "gift, devise or inheritance * * *."

The Laws of 1876 and 1878 come as nearly as any to the support of plaintiff's contention, but both fall short of the mark. Under the 1876 act (1 B & C, § 30, p 90, supra) the statute related merely to the parties who might sue and be sued. It was strictly procedural. Furthermore, the provision authorizing a wife to sue for a wrong committed against her person is separated from the paragraph authorizing actions between husband and wife and was not applicable to the latter situation. The 1878 Law (B & C, § 31, p. 91, supra) was also a part of the procedural statute concerning parties to actions. It authorized a wife to sue for the protection of her rights and property as if unmarried, but did not mention suits between husband and wife or define any substantive rights. Both acts were repealed in 1927 and if it be assumed that they affected substantive rights or modified the common law, then we must also assume that their repeal revived the common law. In 1894, and thus long after

the enactment of most of the statutes above cited, this court said:

> "The effect of modern statutes upon the rights of married women has been to give them the privilege of applying to the law courts for relief which under the common law they could obtain only in a court of equity. These statutes have not created new rights, but have provided another forum for their enforcement. * * *" *Grubbe v. Grubbe,* 26 Or 363, 371.

The early statutes accomplished much. They related to procedure or to the competency of the husband or wife as witnesses or to their respective rights or liabilities as to third parties. They did eliminate the ancient theory that husband and wife are one and the husband is that one, and they did create separate property rights in married women. But a careful examination will disclose a canny avoidance in all of them of any words (readily available) which would have created substantive rights in either a wife or husband to sue the other for a negligent tort.

This brings us to the broad language of the 1880 statute (B & C, § 5250; OCLA, § 63-202) as amended by Laws of 1941, and which was in force at the time that the plaintiff's alleged cause of action arose. The act carefully identifies several disabilities of a wife which are repealed. They are those which "are not imposed or recognized as existing as to the husband" but there is no indication that a husband can sue his wife for a negligent tort. Again, the last paragraph of the 1941 act gives to a wife the same right to sue for any unjust usurpation of her natural or civil rights that the husband has, but it does not purport to give him any right to sue her for negligent tort. The clause which confers upon the wife a right of action for loss of consortium refers, of course, not to an action

against the husband, but to an action against a third party, and the statutory provision bestowing the right to sue "among other things" for loss of consortium refers to other similar things, i.e., other rights against third parties. The provision granting to the wife the substantive right to sue for loss of consortium illustrates the purpose of the lawmakers to place her on a par with her husband. That enactment merely gave her the right which the common law had given to her husband. *Kosciolek v. Portland Railway, L. & P. Co.,* 81 Or 517, 160 P 132; *Sheard v. Oregon Electric Ry.,* 137 Or 341, 2 P2d 916. The statute as it was before the 1941 amendment was held by this court to have conferred no new right of action upon a wife. "It only allows her admission to the courts as a suitor independent of her husband for the purpose of redressing the infringement of rights which she already had." *Kosciolek v. Portland Railway, L. & P. Co.,* supra. Again the court said:

"* * * It cannot be said that the marriage relation gives rise to natural rights in the sense designated by the common-law writers, for that relation grows out of the customs of society, and is more or less conventional. Kosciolek v. Portland Ry. L. & P. Co., 81 Or 517 at 523."

Returning to the 1941 amendment, we think the legislative intent was carefully expressed to vest in the wife such civil rights *belonging to the husband* which have not heretofore been granted her by statute or the common law, and we find no intent expressed to give to her or to her husband the right to sue the other spouse for negligent tort. At common law neither wife nor husband could sue the other for a negligent tort. *Chestnut v. Chestnut,* 77 Ill 346; *Willott v. Willott,* 333 Mo 896, 62 SW2d 1084, 89 ALR 114; 41 CJS

877, Husband and Wife, § 396; McCurdy, Torts Between Persons in Domestic Relation, 43 Harv L Rev, 1030, 1033. While we cannot say that there is any statutory declaration of public policy adverse to the right of a married woman to sue her husband for negligence, common or gross, we can say that there appears to have been a studied willingness to avoid tinkering with that subject.

■ The question presented is, therefore, whether this court should in a case of this kind express its own conclusions as to the public policy of the state relative to this issue. In that connection we recognize that when the public policy of the state is clearly expressed by statute, it will control, and that in general, questions of public policy are primarily, though not exclusively, for legislative determination.

It should first be observed that in most of the decisions favoring the plaintiff's position, the result has not been obtained by a mere judicial modification of the earlier common law, but, on the contrary, the results have been obtained by the process of statutory construction, and consequently, they were dependent upon the particular provisions of the enactments of the several states. In many instances also, the cases cited by the plaintiff, or which might be cited, have involved intentional trespasses as distinguished from mere negligent conduct. In the case of intentional wrongs, considerations of great potency are involved which are not present in cases involving negligence only.

We will now review the cases cited by plaintiff. In doing so we recognize that some of them do support her contention upon the basis of statutory construction or of common-law reasoning, or both.

In *Brandt v. Keller,* supra, 413 Ill 503, 109 NE2d 729, the plaintiff sued her divorced husband for a wilful

and wanton tort committed during coverture. The decision was based upon statutory construction and the relevant statute closely resembled the provisions of the Oregon statute of 1878 which was repealed in 1927. See supra.

In *Brown v. Brown*, 88 Conn 42, 89 A 889, the plaintiff wife sued her husband for damages for assault and battery and for wrongfully confining her in an insane asylum. The decision for plaintiff was based upon the construction of a Connecticut statute. The court added that "When the purposes of the marriage relation have wholly failed by reason of the misconduct of one or both of the parties, there is no reason why the husband or wife should not have the same remedies for injuries inflicted by the other spouse which the courts would give them against other persons. * * *" With this statement we are inclined to agree, but it is not relevant to the case at bar.

*Brown v. Gosser*, Ky (1953) 262 SW2d 480, was an action for damages to the person caused by the negligent operation of an automobile. The accident happened and the suit was filed before marriage. It was held that the plaintiff might after marriage maintain the action against the defendant husband. Here it is apparent that the plaintiff acquired a substantive right of action as a feme sole and the problem related to her procedural rights after marriage. The court expressly recognized that the prevailing rule denied to either spouse the right to maintain an action against the other for negligence, citing many cases. But after consideration of the traditional arguments against recovery, the court adopted the minority rule and the plaintiff prevailed. The case was based both upon statutory construction and upon a common-law type of consideration of the merits.

In *Brown v. Mack,* 56 NYS2d 910 (1945), the plaintiff sued the executor of the estate of her deceased husband for a libel published in her husband's will. It was held that the complaint stated a good cause of action of an intentional tort. The New York statute, as amended in 1937, expressly provided that "A married woman has a right of action against her husband for his wrongful or tortious acts resulting to her in any personal injury as defined  *  *  *." 14 McKinney's Consolidated Laws of New York, Annotated, Domestic Relations Law, § 57, p 237. In that case the New York statute was so clear that resort to construction was unnecessary. Prior to the enactment of that law the New York Court of Appeals had held that a husband was not liable to his wife for personal injuries caused by his negligent operation of an automobile. *Mertz v. Mertz,* 271 NY 466, 3 NE2d 597.

The opinion in *Courtney v. Courtney,* 184 Okla 395, 87 P2d 660, 667 (1939) presents a strong argument for recovery by a wife against her husband. The court expressly conceded, however, that it was "among the pioneering minority." The authorities pro and con are listed. The construction placed upon Article II, § 6 of the Oklahoma Constitution differs materially from that which has heretofore been placed upon the provisions of Oregon Constitution, Article I, § 10 by this court. *Stewart v. Houk,* 127 Or 589, 271 P 998; *Perozzi v. Ganniere,* supra, 149 Or 330, 40 P2d 1009; *Noonan v. City of Portland,* supra, 161 Or 213, 248, 88 P2d 808. Furthermore, the statute which in some respects resembles that of Oregon also contains the following broad language:

"Woman shall retain the same legal existence and legal personality after marriage as before marriage and shall receive the same protection of all

her rights as a woman which her husband does as a man. * * * '' Okla Stat, 1951, Title 32, § 15.

In *Crowell v. Crowell,* 180 NC 516, 105 SE 206, the wife sued her husband for knowingly, wilfully and recklessly infecting her with a venereal disease. The court held that such conduct constituted an assault and recovery was allowed.

In *Damm v. Elyria Lodge No. 465,* 158 Ohio St 107, 107 NE2d 337, the plaintiff was allowed recovery against a voluntary association of which her husband was a member.

In *Johnson v. Ottomeier,* 45 Wash2d 419, 275 P2d 723, the question was stated thus:

"Where a husband murders his wife and then commits suicide, leaving children, does the wife's personal representative have a cause of action against the husband's estate, for the benefit of the children, under the wrongful death act of this state? The trial court said 'no' ''

It was held that under the wrongful death statute a new cause of action arose which could be enforced by the personal representative of the murdered wife against the estate of the deceased husband who had committed suicide.

In *Lorang v. Hays,* 69 Idaho 440, 209 P2d 733, the plaintiff sued her husband for false arrest and imprisonment. The court held for the plaintiff as a matter of statutory construction. The court said:

"* * * Many courts of last resort in their recent decisions hold that the action may be maintained, particularly when the spouses are separated, and that the husband is liable for a willful tort committed against the person of his wife."

The court quoted the portion of the opinion in *Brown v. Brown,* supra, which we have also quoted with approval.

In *Scotvold v. Scotvold,* 68 SD 53, 298 NW 266, 268, the decision for the plaintiff was based upon the construction of a statute much broader than that of Oregon. It provided in part:

"The wife shall have and retain after marriage all the civil and property rights of a single woman. \* \* \*" Rev Civil Code of 1903, § 105.

In *Steele v. Steele,* 65 FSupp 329, the plaintiff sued for assault committed after a decree of absolute divorce had been entered but before it became final. The court cited the Married Women's Act of the District of Columbia which provides in part that married women shall have power to sue separately "for torts committed against them, as fully and freely as if they were unmarried. \* \* \*" As a matter of statutory construction the court expressed the opinion that the language was unambiguous and granted to a wife the right of action against her husband for assault. The court, however, found itself precluded from adopting this view by the decision of the United States Supreme Court in *Thompson v. Thompson,* 218 US 611, 54 L ed 1180. In view of the fact that the assault took place after the decree of divorce it was held that the plaintiff might recover. It will be observed that the statute in the District of Columbia was much broader than that of Oregon.

In *Wait v. Pierce,* 191 Wis 202, 209 NW 475, a wife sued the partnership of which her husband was a member for the negligent operation of an automobile by an employee of the partnership. The decision was based upon the construction of a statute which pro-

vided in part that "any married woman may bring and maintain an action in her own name for any injury to her person or character the same as if she were sole * * *." It was held that the plaintiff might recover.

The foregoing brief analysis of the cases cited by plaintiff will illustrate the fact that the weight to be given here to the decisions in other jurisdictions depends not alone upon the differences in the facts, but also upon the disparity of the applicable statutes. By way of further example, in North Dakota a wife has a substantive right of action against her husband, but in that state the right is given in express and unequivocal statutory terms. See *Fitzmaurice v. Fitzmaurice,* 62 ND 191, 242 NW 526; CL, 1913, § 4411. See also *Gilman v. Gilman,* 78 NH 4, 95 A 657; and Public Statutes, 1901, ch 176, § 2; *Rains v. Rains,* 97 Colo 19, 46 P2d 740; CL, § 5577.

We return to *Kosciolek v. Portland Ry. L. & P. Co.,* 81 Or 517, 160 P 132. In that case the plaintiff sued for loss of consortium. It was held that the statute of 1880, prior to its amendment, did not confer upon the wife any new right of action. This question received further consideration in *Sheard v. Oregon Electric Ry.,* supra, 137 Or 341, 2 P2d 916. The court proceeded "to determine whether *Kosciolek v. Portland Ry. L. & P. Co.* [supra] finds support among the authorities, and also, of course, in reason." We concluded that "It thus appears that the authorities everywhere are in harmony with our holding in *Kosciolek v. Portland Ry. L. & P. Co.*" It was apparently by reason of this rule which had prevailed unquestioned since 1916 that the statute was amended and the substantive right to sue for loss of consortium was affirmatively granted. As to other rights conferred upon

the wife under the 1941 amendment, the grant was limited to rights "belonging to the husband" or "that the husband has." No provision of the common law and no statute has ever given the husband a substantive right of action against his wife for negligent tort. The construction of the statute thus firmly fixed in two well-considered opinions should not now be overruled in the absence of strong considerations of public policy or of distinctions in the relevant facts involved.

Many cases have denied recovery for tort in actions between husband and wife after considering statutes palpably more favorable to the plaintiff's contention than that to be found in Oregon. Among many, and because of the reasoning involved, we cite: *Willott v. Willott,* 333 Mo 896, 62 SW2d 1084, 89 ALR 114, citing authorities; *Thompson v. Thompson,* 218 US 611; *Newton v. Weber,* 196 NYS 113; *Johnson v. Ottomeier,* supra, 45 Wash2d 419, 275 P2d 723 (1954); *Libby v. Berry,* 74 Me 286; *Mertz v. Mertz,* supra, 271 NY 466, 3 NE2d 597 (1936); *Austin v. Austin,* 136 Miss 61, 100 So 591; *Conley v. Conley,* 92 Mont 425, 15 P2d 922; *Corren v. Corren* (Fla 1950) 47 So2d 774; *Drake v. Drake,* 145 Minn 388, 177 NW 624; *Emerson v. Western Seed & Irrigation Co.,* 116 Neb 180, 216 NW 297; *Fehr v. General Accident Fire & Life Assurance Corp.,* 246 Wis 228, 16 NW2d 787; *Furey v. Furey,* 193 Va 727, 71 SE2d 191 (1952); *Harvey v. Harvey,* 239 Mich 142, 214 NW 305; *Keister v. Keister,* 123 Va 157, 96 SE 315; *Schultz v. Christopher,* 65 Wash 496, 118 P 629; *Sink v. Sink,* 172 Kan 217, 239 P2d 933 (1952.)

Influenced by the weighty dissent in *Thompson v. Thompson,* supra, which was decided under a statute quite different from our own, some courts have been greatly impressed and have espoused the admittedly

minority view. Clothed in the language of modernity they have heaped criticism upon the ancient theory that husband and wife are one and have shown no little emotion in the process. They find no disruption of domestic tranquillity when a wife sues her husband for tort. They see no distinction between the criminal prosecution of a husband and the right of the wife to sue him for tort, nor do they see any difference between a wife's right to sue for divorce because of cruelty and her right to sue for damages on account of the same. The arguments are adequately reviewed by Professor Prosser whose modern viewpoint is, as usual, qualified by a mellow scholarship. He concedes that in some cases a conclusion adverse to the right of action between spouses for tort has been forced by the language of the statute. He concedes that the weight of authority is against recovery, but rejects that authority. We quote a passage which would suggest that the learned author has wandered for a moment from a pattern of calm judicial analysis:

"* * * The chief reason relied upon by all these courts, however, is that personal tort actions between husband and wife would disrupt and destroy the peace and harmony of the home, which is against the policy of the law. This is on the bald theory that after a husband has beaten his wife, there is a state of peace and harmony left to be disturbed; and that if she is sufficiently injured or angry to sue him for it, she will be soothed and deterred from reprisals by denying her the legal remedy—and this even though she has left him or divorced him for that very ground, and though the same courts refuse to find any disruption of domestic tranquillity if she sues him for a tort to her property, or brings a criminal prosecution against him. If this reasoning appeals to the reader, let him by all means adopt it."

It would seem that a suit for divorce is brought for the approved purpose of ending the marital status which has already been destroyed. Not so a suit for negligence. One would suggest that in criminal prosecutions the plaintiff is the state, not the complaining witness, and the wrong which is adjudicated is a wrong to the public. The argument to the effect that when a husband has beaten his wife, the peace and harmony of the home has already been destroyed, is a valid one, but it applies with force only to intentional wrongs. We are sure that the learned jurist would not say that the peace and domestic tranquillity of the home is ended every time that a wife is shaken up by the inattentive conduct of her husband in operating the family automobile, or vice versa. Nor can it be said that domestic felicity has been forever lost if a husband slips on a carelessly oiled kitchen floor.

The consideration which seems to us to have been frequently overlooked is that the purpose of the statutes in most cases at least has been to place the wife upon an equality with her husband. Of course, the old common law concept of the legal unity of the husband and wife has disappeared but the institution of marriage has not. A harmonious home is still the foundation of a prosperous state. The purpose of statute and decision has been to render a wife equal in right, but not superior in right, to her husband. One of the rare cases in which a husband has asserted a right to sue his wife is *Fehr v. General Accident, Fire & Life Assurance Corp.*, supra, 246 Wis 228, 16 NW2d 787. The plaintiff husband sued the defendant insurance company to recover for personal injuries caused by the negligent operation of an automobile by his wife. The court first recognized the universal rule that at common law a husband could not sue his wife for tort. It

then sought in vain for any statute authorizing husbands to sue wives for tort. The only statute which the court could find was the Married Women's Act. That act, couched in language different from that of Oregon, had been held to vest in a wife the right to sue her husband for tort. The statute provided: "Any married woman may bring and maintain an action in her own name for an injury to her person * * * the same as if she were sole." The Wisconsin court considered and repudiated its own dictum in the earlier case of *Wait v. Pierce,* supra, 191 Wis 202, 209 NW 475, wherein it had been stated that bestowal of a substantive cause of action upon a wife by the legislature had impliedly bestowed a similar right upon the husband. Contrary to that dictum, the court held that the right of the wife under the Married Women's Act was made superior to that of her husband. Judgment for the defendant wife was affirmed. In the light of this decision the reason for the language used in the Oregon statute of 1941 becomes apparent. It was not the intent to make the substantive right of the wife superior to that of the husband. Hence, the legislature repealed the disabilities of the wife "which are not imposed or recognized as existing as to the husband" and bestowed upon her the rights "that the husband had." Such consideration prompted the Montana court to say:

"Clearly, the object of the Married Women's Act of Montana was to relieve the wife of common-law disabilities; among others, to place the wife on an equality with her husband with respect to property matters, the right to contract, and to sue and be sued. We see nothing in any of the foregoing statutes to indicate a purpose to create a right which neither husband nor wife had at com-

mon law." *Conley v. Conley,* 92 Mont 425, 15 P2d 922, 925.

Again the court said at 15 P2d 922, 926:

" * * * None will deny that the change is a radical departure from the basic law; and all must admit that 'whether the exercise of such jurisdiction would be promotive of the public welfare and domestic harmony is at least a debatable question. The possible evils of such legislation might well make the lawmaking power hesitate to enact it. But these and kindred considerations are addressed to the legislative, not the judicial branch of the government.' Thompson v. Thompson, supra." *Conley v. Conley,* 92 Mont 425, 15 P2d 922.

Another case illustrative of the limitations upon the right of the husband against his wife is *Drake v. Drake,* supra, 145 Minn 388, 177 NW 624.

In *Harvey v. Harvey,* supra, 239 Mich 142, 214 NW 305, the Michigan court quoted from *Austin v. Austin,* supra, 136 Miss 61, 100 So 591; 33 ALR 1388, as follows:

" ' * * * The wife's disability to sue the husband was not alone for the lack of a remedy. That was merely incidental. It was for the lack of any cause of action. Therefore, in order to remove any disability of coverture affecting her right to sue, it was necessary to confer a right of action on her. Giving her a remedy to sue was not sufficient.' "

The Michigan court continued:

"The court also pithily remarked:

" 'At common law there was no right of action either by husband or wife against the other for a personal tort. There was absolute equality in that respect. Therefore there was no occasion to emancipate the wife with reference to such torts, because the husband was under the same sort of disability as the wife.

" 'If appellant's contention were sound, we

would have the novel situation of the wife having a cause of action against her husband for a personal tort, while the husband would have no such right against his wife; for there is nothing either in our Constitution or statutes which gives any such right to the husband.'

"This graphically points out the unsoundness of the assertion that, granting the wife right to sue as though a femme sole, gives her a right of action not accorded the husband. Surely the Legislature, in conferring equality of right to sue, did not confer a right of action never possessed by husband or wife at common law. While Married Women's Acts of the various states differ somewhat in phraseology, they are quite alike in purpose and effect."

We find other considerations which militate against the adoption by judicial decision of the rule for which plaintiff contends in negligence cases. Much effort has been expended in attacking the classical theory that protection of the peace and harmony of the home constitutes the basis for nonliability. It would seem that the effect of suit upon marital felicity must depend upon the facts of the particular case. Action by a wife against her husband may conceivably engender great bitterness where it is based on an intentional wrong, or where there is serious and bitter disagreement as to the facts. It is not unusual that the credibility of witnesses is questioned in damage cases. If the action is not truly an adversary one, then the damage to peace and harmony becomes pure fiction. The minority rulings brush aside the risk of collusion by the husband and wife by the simple assertion that the courts know how to deal with collusive suits. But it is obvious that the risk of collusive action increases when the parties plaintiff and defendant are in confidential relationship. The risk of financial loss is

ordinarily inducement enough to encourage a sturdy defense. Remove from a defendant the risk of loss and substitute the covert hope of profit and a situation arises which should give us pause. The Michigan court astutely observed that:

"We can conceive of circumstances where liability insurance, carried by the husband, might prove the moving factor and not at all disrupt connubial bliss in collecting from an insurance company." 214 NW at 306.

We revere the jury system as the bulwark of individual liberty, but we are also realists, and we know that juries are, as a Kentucky mountaineer once said— "tolerable generous with other people's money", especially when the aroma of insurance permeates the courtroom. It would seem that if husband and wife want protection by insurance, accident policies are available. We do see a substantial risk of miscarriage of justice when, in the peace and harmony of connubial bliss, a wife prepares a damage suit against her husband over the solitary protest of an insurance company.

As said in *Austin v. Austin,* supra, 136 Miss 61, 100 So 591, 592:

"* * * For illustration: The husband and wife are living together. She recovers judgment against him for an assault and battery and collects the judgment and puts the money in bank to her credit. They continue to live together as man and wife, if the lawsuit has not separated them. Result: The money would still be available for family purposes, except what had been expended in court costs and lawyers' fees. It would be like the husband taking money out of one of his pockets and putting it back in another. Of course, the same would be true of a suit and recovery by the husband against the wife on a like cause. * * *"

One other consideration moves us to leave this issue to the wisdom of the legislature. At least so far as acts of negligence are concerned, courts and writers alike recognize that there are areas of marital intimacy within which actions for negligence should not be allowed, even under the minority rule. Those areas are not, and we think, cannot, be accurately defined. The treatise of Professor McCurdy of the Harvard Law School is quoted with approval in many opinions which take the minority rule, which he defines as one which would "Permit all actions both in respect to property and personal injuries, and treat the spouses as though they were strangers sole and unmarried." 43 Harv L Rev, 1929-30, Torts Between Persons in Domestic Relation, p 1054. This rule, he contends, is "too broad." He then proposes a rule, as follows:

"Permit all actions both in respect to property and personal injuries, subject to necessary substantive limitations upon the cause of action, due to the relation of the parties. Although a husband has no right, and consequently no privilege by virtue of the marital relation, to beat or chastise his wife or to deprive her of her liberty, it does not follow that there is no privilege arising from the marital relation. It is a matter of common knowledge that the conduct of husband and wife toward each other generally is different from that of strangers. Every motion would not be an assault, nor every touching a battery, although they might be such in particular cases if the parties were strangers. There would be a considerable amount of express or implied consent due to the fact of the marital relation, and even where there was lack of actual consent the relation would license much conduct. And likewise in the case of negligence, since husband and wife are engaged in a common enterprise, for common benefit, often with common control, each should

bear the risk which the other takes in the ordinary conduct of the domestic establishment. To this extent there is no great hardship, in view of the fact that the relation is entered consensually. Under this view, only those acts which are outside the scope of marital intercourse could constitute causes of action. There is an analogous treatment by the courts of the wife's services and earnings under Married Women's Statutes, a delicate balancing of the marital and individual rights and duties. But this view would make the question one of merit, and would not deny all actions because some cases might not involve the necessary substantive elements. Thus, if a wife is a passenger in an automobile improperly driven by the husband, as is the case in all the automobile negligence cases which have been found, there would normally be no cause of action; but if a husband should improperly drive his automobile over his wife, a pedestrian, under such circumstances that a third person would have been injured had he been in the wife's position, there may be a cause of action. The marriage relation might, however, have another substantive effect. If the husband is entitled to his wife's services, and is under the duty to support, an otherwise actionable injury which he inflicts upon her may not constitute a cause of action, for there would be no pecuniary injury to the wife. There would be only pain and suffering and injury to feelings, affecting interests purely of personality. Although this would certainly be true of temporary injuries, it would not apply to permanent ones, unless the impossibility of predicting a divorce or a dissolution of the marriage by the predecease of the husband would be a controlling obstacle to the award of damages. In most places, however, a married woman is by statute entitled to her services and earnings. These statutes have generally been held not to affect the husband's right to his wife's services in the home, and in some places not to affect services for the husband outside the home. And the duty to support has

> generally been unaffected by statute. It is submitted that this provides a proper solution wherever the Married Women's Act does not preclude it."
> 43 Harv L Rev, 1929-30, Torts Between Persons in Domestic Relation, p 1055.

It has also been suggested that the right of action in a wife should be qualified by applying the doctrine of assumption of risk in various cases arising within the purview of the marital relation. To adopt such a hazy criterion, as suggested by Professor McCurdy, would, in our opinion, open the doors to litigation but withhold the assurance of victory in many cases. We are not disposed to carve out the area within which actions for negligence should be allowed, or that other area in which the intimacy of the family relationship forbids recovery by the spouses. Nor are we disposed to adopt by judicial mandate the law concerning assumption of risk which we have held to be applicable only in cases involving master and servant. *Eldred v. United Amusement Co.*, 137 Or 452, 2 P2d 1114.

■ Finding no clear-cut issue of public policy, and no line of demarcation to which we can hew, we must leave the right of husband or wife to sue the other for negligent tort to the tender mercies of the legislature.

The judgment for the defendant is affirmed.