KOBE, APPELLANT, *v.* KOBE, APPELLEE. ■
[Cite as Kobe v. Kobe (1978), 61 Ohio App. 2d 67.]

(No. 37773—Decided December 21, 1978.)

*Ms. Bernice G. Miller,* for appellant.
*Mr. John F. Sands,* for appellee.

PRYATEL, J.   On January 8, 1976, Charlene Kobe, appellant, filed for divorce against Albert Kobe, appellee, in the Cuyahoga County Court of Common Pleas (case No. D-68729). On July 23, 1976, appellant was awarded a divorce upon the grounds of extreme cruelty. That same day, July 23, 1976, she brought an action in tort in the Common Pleas Court against appellee alleging a willful and intentional assault and battery to her person during their marriage.

The complaint alleged that on July 26, 1975, appellee severely beat the appellant, inflicting permanent physical disabilty including her loss of taste and smell and the scarring of her brain tissue.

On February 17, 1977, appellee filed a motion to dismiss the complaint for lack of capacity to sue pursuant to Civ. R. 12 (B) (6). He contended that under the laws of the state of Ohio a wife could not sue for a tort committed by her spouse against her during marriage. The trial court granted appellee's motion to dismiss on March 14, 1977. The appeal is from this final order.

Appellant submits a sole assignment of error:

The lower court erred to the prejudice of the plaintiff-appellant by granting the defendant-appellee's motion to dismiss for lack of capacity to sue.

The standard of law to be applied by a court reviewing the granting of a motion under Civ. R. 12 (B) (6) is clear:

"In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ. R. 12 (B) (6) ), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. (*Conley* v. *Gibson,* 355 U. S. 41, followed.)" *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242, syllabus.

Appellee argues that the lower court did not abuse its discretion by granting appellee's motion to dismiss. He further asks that the ruling not be disturbed on appellate review absent the showing of a manifest abuse of discretion by the lower court in reaching its decision. However, a court is constrained to exercise a stringent standard of law in considering the granting of a motion to dismiss a claim. The policy set forth in the Rules of Civil Procedure encourages the liberal examination of claims to ensure a claimant his day in court. *Conley* v. *Gibson, supra.* Coming as it does at the pleading stage, a motion to dismiss is viewed with disfavor and should rarely be granted. *Madison* v. *Purdy* (C.A. 5, 1969), 410 F. 2d 99; *Slife* v. *Kundtz Properties* (1974), 40 Ohio App. 2d 179.

It therefore becomes necessary to ascertain whether appellant has a cause of action under the law of Ohio.

At common law, a married woman lacked capacity to sue or be sued in her own name. That stricture has been changed by statute in Ohio through R. C. 2307.09 and 2323.09. *Damm* v. *Elyria Lodge No. 465, Benevolent Protective Order of Elks* (1952), 158 Ohio St. 107. However, not all common law interspousal immunities and disabilities have been removed by these statutes. *Lyons* v. *Lyons* (1965), 2 Ohio St. 2d 243.

It is the established law of this state that one spouse is barred from suing the other for the commission of a negligent tort during coverture. *Lyons* v. *Lyons, supra.*

The Ohio Supreme Court has elucidated the policy underlying this rule of law:

"The public policy of this state is to promote marital harmony. Encouraging litigious spouses tends to foster marital disharmony. If a husband and wife are free to sue each other for real or fancied wrongs, this will place an additional burden upon the marriage relationship, and the home may well be split apart by the adversary roles which the spouses will be required to assume. *Thompson* v. *Thompson* (1910),

218 U. S. 611; *Rubalcava* v. *Gisseman* (1963), 14 Utah 2d 344, 384 P. 2d 389; *Goode* v. *Martinis* (1961), 58 Wash. 2d 229, 361 P. 2d 941; *Campbell* v. *Campbell* (1960), 145 W. Va. 245, 114 S. E. 2d 406.

"Likewise, it is the public policy of this state to prevent fraud and collusion.

"There is the real danger of fraud or collusion between the spouses in such suits against each other, where insurance is involved. Such suits encourage raids upon insurance companies. See dissenting opinion of Chief Justice Sims in *Brown* v. *Gosser* (Ky. 1953), 262 S.W. 2d 480, 485.

"It is argued that the task of weeding out fraudulent or collusive suits is properly within the sphere of courts and juries.

"In truly adversary cases, fraud is likely to be uncovered because of the desire of the defendant to avoid the loss. Where insurance is involved, the risk of loss is removed, and both spouses stand to gain from a decision adverse to the defendant. This creates a strong inducement to trump up claims and conceal possible defenses. *Smith* v. *Smith* (1955), 205 Ore. 286, 287 P. 2d 572." *Lyons* v. *Lyons, supra,* at 244-245.

Public policy discourages suits destined either to disrupt marital harmony or to work fraud upon third parties through the collusion of spouses. The rule is grounded in law that represents the majority view of jurisdictions in this country. *Lyons* v. *Lyons, supra,* at 247; annotation, 43 A.L.R. 2d 632, 632-671. The court further stated that no "useful purpose would be served in overthrowing the rule of interspousal immunity," emphasizing that any change in such policy should emanate from the state legislature. *Lyons* v. *Lyons, supra,* at 246-247.

The *Lyons* decision was based in part upon a case of the Oregon Supreme Court which similarly held that interspousal immunity serves to bar a negligence action in tort between spouses. *Smith* v. *Smith, supra.* The Oregon court held that no consideration of public policy required a change in the common law rule that one spouse may not sue another for negligent tort. The court thus reflected the reasoning supplied in *Lyons* that:

"***[W]hen the public policy of the state is clearly expressed by statute, it will control, and that in general, questions of public policy are primarily, though not exclusively, for legislative determination." *Smith* v. *Smith, supra,* at 299, 287 P. 2d at 578.

However, the circumstances set before this court vary significantly from those presented in *Lyons.* The issue here is whether the same rule of nonliability for a tort applies when intentional rather than negligent injury is inflicted by one spouse upon the other. The public policy set forth in *Lyons* has little relevancy to the facts presented here in which appellant contends her husband beat her severely while they were married.

It is significant that on the same day in which it was decided in *Smith, supra,* that one cannot sue a spouse for negligent torts, the Oregon Supreme Court also held that a wife may sue her husband for an intentional tort committed against her. *Apitz* v. *Dames* (1955), 205 Ore. 242, 287 P. 2d 585. After making an exhaustive review of the law of Oregon and other jurisdictions in this country, the court distinguished the facts of the *Smith* case stating:

"We hold that when a husband inflicts intentional harm upon the person of his wife, the peace and harmony of the home has been so damaged that there is no danger that it will be further impaired by the maintenance of an action for damages and she may therefore maintain an action." *Apitz* v. *Dames, supra,* at 271, 287 P. 2d at 598.

In considering public policy we hold that the complaint of the appellant for damages arising out of the alleged intentional tort of her husband falls outside the scope of *Lyons.* This claim *sub judice* was initiated after the two were legally divorced, at a time when marital harmony was irrevocably lost. *Markley* v. *Closson* (1970), 25 Ohio Misc. 87. There can be no collusion, since the two are clearly occupying adversary positions where "fraud is likely to be uncovered because of the desire of the defendant to avoid the loss." *Lyons* v. *Lyons, supra,* at 245. Moreover, the alternative sources of remedy available to the appellant—criminal prosecution (and the divorce already granted)—are inadequate in light of the allegation that appellant will suffer permanent and extensive

physical disability. *Apitz* v. *Dames, supra,* at 258, 287 P. 2d at 592.

"* * *[T]here is no reason why the husband or wife should not have the same remedies for injuries inflicted by the other spouse which the courts would give them against other persons." *Brown* v. *Brown,* (1914), 88 Conn. 42, 49, 89 A. 889, 892.

The knowledge that the appellee has been prosecuted or that he is no longer appellant's husband would hardly compensate appellant for the permanent injuries she sustained. In the absence of testimony and any evidence of the merits of appellant's complaint, precluded by the granting of appellee's motion to dismiss the action, we cannot conclude as a matter of law that appellant has no capacity to sue her husband for his alleged intentional serious tort committed against her person. We limit our holding to the facts before us, i.e., a wife may institute an action against her husband after they are divorced for serious injuries intentionally inflicted during coverture.

Accordingly, appellant's assignment of error is sustained. The judgment is reversed and the cause is remanded to the lower court for its further consideration of the case consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

KRENZLER, P. J., and JACKSON, J., concur.