BAILEY, Appellee and Cross–Appellant,

v.

SEARLES–BAILEY et al., Appellants and Cross–Appellees.

[Cite as *Bailey v. Searles–Bailey* (2000), 140 Ohio App.3d 174.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

Nos. 98CA87, 98CA98.

Decided Aug. 11, 2000.

Raymond Vasvari, for appellee and cross-appellant.

Diane Searles–Bailey, pro se; Michael D. Rossi, for appellant and cross-appellee Jeffrey Fodor.

VUKOVICH, Judge.

Defendants-appellants Jeffrey Fodor and Diana Searles–Bailey, n.k.a. Searles–Fodor, appeal the decisions of the Mahoning County Common Pleas Court, which granted judgment to plaintiff-appellee/cross-appellant Randall Bailey on his claim of intentional infliction of emotional distress and awarded compensatory and punitive damages. For the following reasons, the trial court's judgments are reversed.

## STATEMENT OF FACTS

Ms. Searles and Mr. Bailey were married in 1981. In January 1989, Searles began an affair with Fodor. In April of that year, Searles informed Fodor that she was pregnant and that she was uncertain of whether the father was Bailey or Fodor. Although she continued her affair with Fodor, Searles informed Fodor that she wished to raise the child as her husband's child. Thus, she did not inform Bailey of her uncertainty. The child was born on October 20, 1989.

In August 1990, Searles asked Bailey to move out of their home, and the two separated. Due to concern over custody of the child during a divorce, in early September Searles and Fodor allegedly scheduled blood tests. Thereafter, Searles wrote Fodor a letter which stated the following:

"[W]e've been having this affair for two years now and one baby later * * * I know there's no wrong or right way for anything to be done. I could continue * * * relationship * * * you as it is or I can change it drastically by moving away from here. I certainly don't want to continue like this. I can't take it, and it's not fair to anyone, especially [the child]. I could leave and have you support me by establishing paternity. You know what Susan and I say, get him where it hurts, in their pockets. Speaking of which, maybe there is no reason to have those blood tests done now. I wanted them done because I wanted to be prepared in dealing with Randy, but I only * * * tests if I was going to divorce * * * that isn't going to happen now." (Unreadable words represented by " * * * ".)

Searles allegedly tore the letter up and disposed of it in Fodor's trash can instead of giving it to him. On October 6 or 7, while Fodor and Searles were out of town together, Fodor's wife found the letter and pieced it back together. She then gave it to Bailey.

Thereafter, on October 8, 1990, blood was drawn from Searles, Fodor, and the child. Searles received the results in early November at which time she informed Bailey that she received the paternity test results and that he was not going to like them. The results, showing a 99.98% probability that Fodor was the father, were mailed to Bailey's attorney in December 1990.

The divorce action began in 1991. That summer, blood tests on Bailey confirmed that he was not the child's father. In August, Bailey filed a complaint against Searles and Fodor alleging intentional infliction of emotional distress and requesting compensatory and punitive damages.[1] Fodor sought and was denied summary judgment. The case was bifurcated.

---

1. The trial court dismissed the complaint on the grounds that Ohio law no longer recognizes a cause of action for criminal conversation. On appeal in case number 93 CA 107, this court reversed and held that Bailey was not seeking to recover for criminal conversation.

First, the liability and compensatory portion of the case was tried to a magistrate. On April 21, 1997, the magistrate entered judgment for Bailey and against Searles and Fodor jointly and severally in the amount of $45,000 plus interest and costs. Searles and Fodor filed objections, which the trial court overruled.[2]

The punitive phase was then tried to a magistrate. On January 14, 1998, the magistrate awarded $5,000 in punitive damages to Bailey. All three parties filed objections. On April 10, 1998, the trial court overruled all objections. Fodor appealed, resulting in case number 98 CA 87. Searles appealed, resulting in case number 98 CA 98. Bailey cross-appealed, arguing that $5,000 in punitive damages was insufficient.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The cause before us involves two issues that permeate the assignments of error set forth by the respective parties: (1) whether the concealment by a wife and her paramour of the fact that the husband is not the father of a child is actionable under the theory of intentional infliction of emotional distress, notwithstanding R.C. 2305.29,[3] which abolished amatory actions; and (2) if not prohibited, does the record reflect compliance with the necessary elements of that tort.

In *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 374, 6 OBR 421, 425–426, 453 N.E.2d 666, 670–671, the Supreme Court of Ohio established its recognition of the tort of intentional infliction of emotional distress as a tort characterized by a tortfeasor who, through extreme and outrageous conduct, intentionally or recklessly causes severe emotional distress to another. Inevitably, that case was subsequently cited by litigants seeking redress for wrongs that might be barred under other tort theories, including actions amatory in nature that were prohibited by the enactment by the legislature of the aforementioned R.C. 2305.29.

---

**2.** The case was then appealed to this court. However, we dismissed the appeal in case number 97 CA 120 for lack of a final appealable order on the grounds that the punitive damages phase had not yet been held.

**3.** R.C. 2305.29: "No person shall be liable in civil damages for any breach of a promise to marry, alienation of affections, or criminal conversation, and no person shall be liable in civil damages for seduction of any person eighteen years of age or older, who is not incompetent * * * ."

   *Alienation of Affections:* the enticement, seduction, or other wrongful and intentional interference by a third party with the marital relationship and which deprives either the husband or the wife of the consortium of the other. *Smith v. Lyon* (1918), 9 Ohio App. 141, 1918 WL 836.

   *Criminal Conversation:* an action to redress the violation of a spouse's right of exclusive sexual intercourse. *Trainor v. Deters* (1969), 22 Ohio App.2d 135, 51 O.O.2d 258, 259 N.E.2d 131.

Accordingly, the Supreme Court of Ohio saw the need to clarify the relationship of such amatory actions and its holding in *Yeager,* and observed:

"A majority of the court of appeals below * * * suggested that this court had implicitly resurrected amatory torts when we decided *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666. Such a suggestion is wrong. * * *

"* * *

"In recognizing the independent tort of intentional infliction of emotional distress, we did not intend to revive the abolished torts of alienation of affections and criminal conversation. We believe the General Assembly intended to eliminate these common-law actions regardless of the title they are given or the severity of the alleged misconduct." *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 214–215, 527 N.E.2d 1235, 1242.

Moreover, the court in *Strock* held that:

"[T]he torts of alienation of affections and criminal conversation, which were abolished by R.C. 2305.29, are not revived by the recognition of the independent tort of intentional infliction of emotional distress. See *McCutcheon v. Brooks* (1988), 37 Ohio App.3d 110, 524 N.E.2d 202." *Id.* at 216, 527 N.E.2d at 1243.

In *McCutcheon* the court of appeals noted:

"The General Assembly intended that the torts of alienation of affections and criminal conversation be eliminated regardless of what name they are called or the severity of the misconduct involved. If the torts were to be recognized again under the name of intentional infliction of emotional distress, all of the can of worms that existed before would be reopened again. We do not believe that the Ohio Supreme Court had in mind, in recognizing the independent tort of intentional infliction of emotional distress in *Yeager,* that this action could be substituted for the abolished torts of alienation of affections and criminal conversation even though conduct associated with those torts might meet the legal standards of the tort of intentional infliction of emotional distress." *McCutcheon, supra* at 111–112, 524 N.E.2d at 204.

While it is clear that *Yeager* cannot be used in place of statutorily prohibited amatory causes of action, we do not interpret the foregoing authorities as being the death knell for all causes of action that merely involve formerly amatory actions. In support of this conclusion, we note the case of *Koepke v. Koepke* (1989), 52 Ohio App.3d 47, 556 N.E.2d 1198, which was heavily relied upon by the trial court in the case at bar. In *Koepke* (decided fourteen months after *Strock*), the court was faced with a fact situation almost identical to the one in the case at bar. That is, Koepke filed a suit against his ex-wife alleging that he sustained emotional distress as a result of the nontimely disclosure that he was not the

biological father of the child he was raising. The court of appeals reversed the trial court and held that there was a cause of action for intentional infliction of emotional distress.

Moreover, the court of appeals in *Koepke* observed:

"Appellant correctly asserts that nothing would prevent him from bringing an intentional tort claim against an unrelated third person. In *Kobe v. Kobe* (1978), 61 Ohio App.2d 67, 15 O.O.3d 86, 399 N.E.2d 124, the court held that a wife could sue her husband after they were divorced for injuries inflicted during the marriage. [Footnote omitted]. In reaching this conclusion the court noted that:

" ' "* * * [T]here is no reason why the husband or wife should not have the same remedies for injuries inflicted by the other spouse which the courts would give them against other persons." ' [Citations omitted.]" *Koepke, supra,* at 48–49, 556 N.E.2d at 1199–1200.

Furthermore, the court in *Koepke* set forth its reasoning as follows:

"We acknowledge, as did the court below, that almost all divorce actions involve some form of emotional distress. Nonetheless, in recognizing the independent tort of emotional distress the Supreme Court of Ohio has specifically stated that the harm involved must be serious. That high burden of proof will help to discourage parties from bringing suits involving ordinary and/or frivolous claims for emotional distress.

"We also understand that courts have a strong interest in judicial economy. However, this concern does not outweigh the fact that a domestic relations forum is not the proper forum in which to litigate a tort claim." *Koepke, supra,* at 49, 556 N.E.2d at 1200.

Significantly, the Supreme Court of Ohio overruled a motion to certify the record in *Koepke.* (See 49 Ohio St.3d 708, 551 N.E.2d 1304.)

Finally, we believe the Supreme Court offered further clarity in a footnote to its decision in *Mussivand v. David* (1989), 45 Ohio St.3d 314, 323, 544 N.E.2d 265, 274, fn. 11, when it stated:

"This case does not involve a breach of a promise to marry. Furthermore, appellee does not expressly state that because of appellant's action, he suffered from alienation of his wife's affections; nor does he allege criminal conversation or seduction. Only if his cause of action is disguised as one for alienation of affections, criminal conversation, or seduction, will R.C. 2305.29 apply. * * *

"* * *

"In *Strock, supra,* we determined that a complaint, although ostensibly alleging intentional infliction of emotional distress, was in effect an action for criminal conversation and alienation of affections. There, the husband stated that his

marriage was harmed, resulting in divorce. Repeated throughout the complaint were references to an alleged affair between his wife and defendant. *Id.* at 215, 527 N.E.2d at 1242. That is quite different from what appellee alleges here, namely, contraction of an incurable disease as a result of appellant's negligence. * * * "

■ From the foregoing authorities, we conclude that the proper threshold test for determining when a claim for the intentional infliction of emotional distress involving an extramarital affair properly before a trial court is: (1) is the claim a disguised substitute for one of the prohibited amatory claims set forth in R.C. 2305.29, and (2) if not, is the harm to the claimant serious. In the case *sub judice*, Bailey's claim is based upon the severe emotional distress he sustained in finding out the child born during his marriage was not his biological child, and not on the fact that his wife was having an adulterous affair. Moreover, all parties concede that the harm to Bailey was severe and serious. Accordingly, his claim was properly considered by the trial court.

■ We now can address the second of the fundamental issues before this court. Namely, does the record support the finding by the trial court that Bailey's ex-wife and her former adulterous partner were each the perpetrators of an intentional infliction of emotional harm. We begin our analysis with a review of the elements necessary to support such a cause of action. The Supreme Court in *Yeager* set forth the basic parameters of the tort by its adoption of the Restatement of the Law 2d, Torts (1965) 71, Section 46(1): "[P]laintiffs must necessarily be expected and required to be hardened * * * to occasional acts that are definitely inconsiderate and unkind." *Id.* at 375, 6 OBR at 426, 453 N.E.2d at 671, quoting Comment *d* to Section 46 of the Restatement of the Law 2d, Torts (1965), at 73. Hence, liability is appropriately imposed only where the conduct is so outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized society. *Yeager.* The recitation of the facts of the case should lead an average member of the community to exclaim, "*Outrageous!*" *Id.*

■ As succinctly stated by another court, to prevail on a claim based upon the intentional infliction of emotional harm, a plaintiff must prove that (1) the defendant intended to cause serious emotional harm, or knew or should have known such harm would necessarily result, (2) the defendant engaged in extreme or outrageous conduct, (3) said conduct proximately caused plaintiff's injury, and (4) the plaintiff suffered serious mental anguish. *Ashcroft v. Mt. Sinai Med. Ctr.* (1990), 68 Ohio App.3d 359, 360, 588 N.E.2d 280, 280.

Because the alleged perpetrators of the tort do not contest the fact that Bailey sustained serious mental anguish, or that said anguish was the proximate result

of their concealment of the possible nonpaternity of Bailey of the child born while he was cohabitating with his wife, we will now narrow our attention to the outrageous conduct contemplated by *Yeager* and *Ashcroft, supra.*

## *FODOR*

We shall begin our analysis with Fodor's argument that the trial court erred by adopting the magistrate's decision. One issue that he presents for review provides:

"Whether a later-determined biological father has an affirmative duty to disclose, to the biological mother's husband during their marriage, the possibility of the husband's non-paternity of a child conceived and born during that marriage, so that the former's concealment of that possibility is fairly characterized as 'outrageous[,] atrocious, and utterly intolerable in a civilized community.' "

In other words, Fodor maintains that the failure to reveal his uncertainty of paternity to Bailey does not meet the outrageous conduct set forth in *Yeager* and its progeny. We agree, for to rule otherwise would mean that such a disclosure is so normal and socially usual that its rare deviation would outrage society. Unfortunately, the reverse is probably true and most participants to an adulterous affair, even one in which paternity is in doubt, are not eager to confront someone to announce that they might be the father of his child. While the conduct of Fodor might be reprehensible and morally deficient, we cannot state that such a concealment is one that is so clearly outrageous and extreme in degree that it fits within the umbrella of the tort of intentional infliction of emotional distress. As such, Fodor's argument is well taken, and the judgment of the trial court against him should be, and hereby is, reversed.

## *SEARLES*

In her first assignment of error, Searles also argues that the trial court erred in adopting the magistrate's decision and thereby entering judgment against her. She further claims that she lacked the required intent for the cause of action and that her conduct was not extreme and outrageous. However, she focuses on the fact that she was not concealing paternity but was concealing her uncertainty of the paternity. Although Searles concedes that the loss of fatherhood caused Bailey severe emotional distress, she emphasizes that she concealed her uncertainty in order to avoid, not cause, the suffering of emotional distress by her husband. She also considers her conduct to be in conformity with R.C. 3111.03, which states that a husband is presumed to be the natural father of a child born during a marriage absent clear and convincing evidence that he is not the father.

Searles was unsure of the paternity of her child since the day she discovered that she was pregnant. Searles testified that her child resembled her husband's nephew. She also testified, and both men confirmed, that she had unprotected intercourse with both her husband and Fodor in January 1989, the month of conception. That Searles was uncertain distinguishes this case from any case where the wife knew from scientific tests that her husband was not the father of her child and still continued to conceal the fact.

Furthermore, Searles testified that blood could not be drawn for a paternity test until the child was six months old. Testimony established that an appointment was made to have blood drawn when the child was over ten months old. Blood was drawn two weeks prior to the child's first birthday. After receiving the test results, Searles told her husband that he would not like them. The results were mailed to Bailey's attorney a month later.

The question is whether Searles acted extremely and outrageously by failing to inform her husband sooner that her child may not be his, *i.e.*, was her concealment of her uncertainty during pregnancy and through the first year of the child's life beyond all possible bounds of decency and utterly intolerable in a civilized society? "Ohio courts have consistently recognized that it is essential to view such conduct in context" because many situations are "fraught with antagonism and emotion" that a person is expected to endure. *Stepien v. Franklin* (1988), 39 Ohio App.3d 47, 51, 528 N.E.2d 1324, 1330.

■ Searles could have informed her husband upon learning of her pregnancy that the baby might not be his. She could have had a paternity test conducted when the child turned six months old instead of eleven months. It is possible that Bailey would not have suffered as extremely had things been done differently and sooner. The length of her concealment may be characterized as unfair, unkind, or wrong. However, we cannot say that the failure to immediately act constitutes extreme and outrageous conduct as necessary for a claim of intentional infliction of emotional distress. "Only the most extreme wrongs, which do gross violence to the norms of a civilized society, will rise to the level of outrageous conduct." *Brown v. Denny* (1991), 72 Ohio App.3d 417, 423, 594 N.E.2d 1008, 1012. No evidence was presented at trial that demonstrated outrageous or atrocious conduct on the part of Searles as a matter of law. We are not substituting our judgment for that of the trier of fact on credibility issues. Instead, we are holding that, even believing all evidence presented against Ms. Searles, the evidentiary presentation was legally insufficient. Accordingly, her argument is well taken, and the judgment against her must be reversed.

## PUNITIVE DAMAGES

■ Fodor's third assignment of error and Searles's second assignment of error contest the award of punitive damages. Because punitive damages may not

be awarded unless there is judgment and damages on the underlying claim, the punitive damages award is extinguished upon our reversal of the underlying judgments. See *Cabe v. Lunich* (1994), 70 Ohio St.3d 598, 601, 640 N.E.2d 159, 162. As a result of our reversal of the judgments against Fodor and Searles, we need not address the remaining issues presented for our review as they are moot.[4]

For the foregoing reasons, the judgments against Fodor and Searles are hereby reversed.

*Judgments reversed.*

WAITE, J., concurs.

Cox, P.J., concurs in part and dissents in part.

Cox, Presiding Judge, concurring in part and dissenting in part.

I concur with the writer's opinion as to the analysis of the law as to Fodor and concur that the judgment against him should be reversed.

I dissent, however, as to Searles.

The testimony before the trial court was such that she could and did engage in outrageous conduct toward her husband.

She asserts in her brief to this court that she concealed the uncertainty (of the paternity) in order to avoid, not cause, the suffering of emotional distress by her husband.

Her testimony does not read that way, and the magistrate hearing and seeing her testimony was the one to determine credibility.

*Koepke* cited in the opinion controls the law in the instant case and the trial court determines credibility.

I would affirm the judgment as it applies to Searles.

---

4. For instance, Bailey argued that the amount of punitive damages was insufficient.