# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


**04-1199**


**MICHAEL JOSEPH VIATOR**

**VERSUS**

**WENDELL R. MILLER**

**\*\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-790-03
HONORABLE GEORGE BRADFORD WARE, PRESIDING

**\*\*\*\*\*\*\*\*\*\*\*\*\*\***
## SYLVIA R. COOKS
### JUDGE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Jimmie C. Peters and J. David Painter, Judges.

**AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED WITH INSTRUCTIONS.**


J. Ogden Middleton, II
1412 Centre Court, Suite 403
Alexandria, LA 71301
(318) 443-4377
COUNSEL FOR PLAINTIFF/APPELLANT:
    Michael Joseph Viator


M. Allyn Stroud
Wiener, Weiss & Madison
333 Texas Street, Suite 2350
P.O. Box 21990
Shreveport, LA 71120-1990
(318) 226-9100
COUNSEL FOR DEFENDANT/APPELLEE:
    Wendell R. Miller

**COOKS, Judge.**

Plaintiff, Michael Viator, appeals the trial court's ruling granting, in part, defendant, Wendell Miller's, exception of no cause of action based on the doctrine of judicial immunity. Defendant answered the appeal and argues the trial court erred in failing to dismiss Viator's action in its entirety.

## FACTS AND PROCEDURAL HISTORY

In December of 1992, Heather Viator became Wendell Miller's secretary in his private law practice. Heather was married at that time to Michael Viator. At some point in 1993, Heather and Miller became involved in a sexual relationship. After the sexual relationship between Miller and Heather began, and while still married to Michael, Heather became pregnant. A baby boy, A.V., was born on September 1, 1994. The baby's conception date occurred between November and December of 1993.

Miller became city court judge in Jennings in December of 1993. He worked two days a week as City Court Judge, and continued to work in private practice for three days a week. Heather continued to work as Judge Miller's secretary, and their affair continued as well. In 1996, the Viators were having marital problems and were contemplating divorce. Michael alleged Judge Miller advised Heather she and her husband could continue to live under the same roof for the 180-day separate-and-apart period required by La.Civ.Code art. 102, as long as they did not engage in sexual relations. This advice was communicated to Michael by Heather, and they relied on it and lived in the same house for the 180-day period.[1] In October of 1996, Heather, represented by counsel, filed a petition for divorce in the Thirty-First

_____

[1] There are cases which hold, in order to fulfill the "separate and apart" criterion, the parties must actually reside in different dwellings. *Singleton v. Rogers*, 160 La. 196, 106 So. 781 (1926); *Billac v. Billac*, 464 So.2d 819 (La.App. 5 Cir. 1985).

Judicial District Court, *Heather Lynn Chisolm Viator v. Michael Joseph Viator*, No. C-963-96. Although Heather was represented by counsel, Michael alleged Judge Miller assisted in the preparation of the divorce petition. In 1996, Judge Miller was elected as a district judge on the Thirty-First Judicial District Court and assumed the bench on January 1, 1997. He retained Heather as his personal secretary.

On May 16, 1997, Heather filed a rule directing Michael to show cause why a judgment of divorce should not be granted. Michael alleged Judge Miller assisted Heather in drafting, editing and finalizing that rule. On May 20, 1997, Judge Miller presided over the "Rule to Show Cause" hearing and subsequently issued a divorce judgment pursuant to La.Civ.Code art. 102. According to plaintiff, Judge Miller did this despite the failure of the parties to live separate and apart in different dwellings. Joint custody of A.V. was granted and Michael was ordered to pay child support. According to Michael, neither he, his wife nor any legal representative of either was present at the "Rule to Show Cause" hearing. He alleges only a court reporter and bailiff were present, but minutes were created which reflected that a hearing took place.

On November 11, 2002, Judge Miller contacted Michael by phone. In the ensuing conversation, Judge Miller confessed to the ten-year sexual relationship he had with Heather. Judge Miller also told Michael he believed he was the biological father of A.V., and demanded that Michael consent to a voluntary DNA test of the minor child. Michael refused. According to Michael, he asked Judge Miller if he realized he had presided over his divorce while he was sleeping with his wife. Judge Miller responded, "[I]f you want to challenge that then you go right ahead." Judge Miller eventually filed a paternity action

Michael filed suit against Judge Miller, individually and in his capacity as a

judge, to have the May 20, 1997 judgment of divorce declared absolutely null and to assert a claim for damages. Michael's claim for damages was based upon theories of bad faith, detrimental reliance, intentional infliction of emotional distress, and general Louisiana tort law. As the suit was filed in the Thirty-First Judicial District Court, Judge Miller issued an order recusing himself. Judge Miller was the only district judge on the Thirty-First JDC. The Louisiana Supreme Court subsequently appointed a judge ad hoc to preside over the action.

Judge Miller filed a peremptory exception of no cause of action asserting that the doctrine of judicial immunity insulated him from any civil action by Michael to recover damages for the conduct alleged and to declare the May 20, 1997 divorce judgment a nullity. The trial court subsequently granted the exception of no cause of action dismissing Michael's action to annul the divorce judgment and to recover damages for any alleged acts or omissions from the time Judge Miller took the bench as a city court judge up to the present time, with the following exceptions:

> The trial court denied the exception (1) as to any claim plaintiff might have against the defendant for intentional infliction of emotional distress based on a phone conversation that occurred between plaintiff and defendant on November 11, 2002; and (2) any claim plaintiff may have against defendant for "civil fraud" prior to the time defendant became a City Court Judge.

At Michael's request, the district judge certified the order as a final judgment, and this appeal followed. Michael argues it was "reversible legal error to grant defendant's peremptory exception of no cause of action and grant defendant protection under the judicial immunity doctrine for all acts/omissions from when defendant became city court judge through his tenure as district court judge." His brief also questions whether "the trial court [was] correct in ruling that the appellant had no cause of action to seek a judgment declaring the May 20, 1997 divorce judgment null and void."

Defendant answered the appeal and argues the trial court erred by failing to dismiss Michael's action in its entirety, because all claims asserted against Judge Miller during the performance of his judicial duties are barred by the doctrine of judicial immunity and all the remaining allegations referring to acts performed outside of his judicial duties do not state a cause of action against him under Louisiana law.

**ANALYSIS**

**A. Nullity Action**

Michael's petition contains numerous allegations attacking the validity of the divorce judgment, including references to Judge Miller failing to recuse himself, granting the judgment of divorce despite the failure of the parties to live in separate dwellings, and holding the divorce hearing when none of the parties or their legal representatives were present. However, there is no allegation in the petition that Michael did not desire to obtain a divorce or that he opposed the divorce proceedings in any way. Thus, on the face of the petition the divorce was consensual and entered into with Michael's full knowledge. Further La.Code Civ.P. art. 2004(B) provides:

> B. An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.

There can be no question that Michael was aware of the grounds which he contends amounted to fraud or ill practices at the time the divorce was granted. Thus, he did not timely seek annulment of the divorce judgment. The lapse of the one-year peremptive period, which extinguishes the cause of action, may be noticed by this court, on its own motion. La.Code Civ.P. art. 927(B). Further, the fact that Judge Miller may have violated the judicial canons that control his professional behavior as a member of the judiciary did not create an independent basis for nullity of the

judgment of divorce at issue. *See Guidry v. First Nat'l Bank of Commerce*, 98-2383 (La.App. 4 Cir. 3/1/00), 755 So.2d 1033, 1036, *writ denied*, 00-920 (La. 5/26/00), 726 So.2d 1106, where the appellate court affirmed the trial court's conclusion that "although a violation of the Judicial Code would justify disciplinary action by the Supreme Court, there was nothing in the law suggesting that a judge's failure to recuse would be grounds to nullify a judgment."

**B.   Judicial Immunity**

The appellate court in *McCoy v. City of Monroe*, 32,521, pp. 7-8 (La.App. 2 Cir. 12/8/99), 747 So.2d 1234, 1241, *writ denied*, 00-1280 (La. 5/30/01), 788 So.2d 441, discussed the doctrine of judicial immunity:

> In *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), the United States Supreme Court recognized the long history of judicial immunity and its importance in protecting judges from vexatious actions prosecuted by disgruntled litigants. The judge is entitled to absolute immunity where he performs "judicial" acts. *Moore v. Taylor*, 541 So.2d 378 (La.App. 2d Cir.1989). A judge, of whatever status in the judicial hierarchy, is immune from suit for damages resulting from any act performed in the judicial role. Judges are absolutely immune from 42 U.S.C. § 1983 liability for all acts performed within their subject matter jurisdiction, even if the acts are malicious. This immunity extends to justices of the peace as well as those that sit on the supreme court and shields judges unless they act either in "the clear absence of all jurisdiction over subject matter" or in a nonjudicial capacity. *Moore v. Taylor*, *supra*.
>
> The Louisiana jurisprudence on judicial immunity mirrors the federal doctrine. A judge may not be cast for damages for his errors unless he has acted outside of his judicial capacity. *Moore v. Taylor*, *supra*.  Even where the judge has technically acted outside his jurisdiction and contrary to law, he will remain protected, unless his actions were based on malice or corruption. *Moore v. Taylor*, *supra*.
>
> Therefore, to state a cause of action against Judge Moore, the plaintiff must allege facts showing not only malice and corruption, but that Judge Moore acted beyond his jurisdiction or outside his judicial capacity.

If the acts alleged involve both judicial and nonjudicial conduct, the unprotected behavior must be separated from the shielded, and judges are liable for

the acts that were not judicial. *Brewer v. Blackwell*, 692 F.2d 387 (5th Cir. 1982). Counsel for Judge Miller acknowledges "that the date Judge Miller became a city judge is not the controlling factor for purposes of judicial immunity." When defendant was a city court judge, he maintained a separate office in which he spent a majority of his time in furtherance of his private practice. Contrary to the trial court, we find the acts complained of by plaintiff prior to the court proceedings in 1997, *i.e.*, the alleged faulty legal advice and the alleged fraudulent acts, which began shortly after Michael's wife started working for defendant, are not protected by the doctrine of judicial immunity. The acts alleged were not acts invoking the judicial machinery, but were by-products of the defendant's private practice or were undertaken outside of his judicial capacity. Therefore, we reverse the portion of the trial court's judgment granting defendant protection under the judicial immunity doctrine for all acts/omissions during the period he was a city court judge and a private legal practitioner.

**C. No Cause of Action Exception**

However, defendant argues even if the acts alleged by Michael are not protected by judicial immunity, they do not give rise to any cause of action recognized by law. He contends there is "no Louisiana jurisprudence that supports the proposition that a person can be held liable for intentional infliction of emotional distress on the basis of informing another person of unpleasant facts, no matter how disturbing those facts may be to the recipient." In Louisiana, to establish intentional infliction of emotional distress, a plaintiff must demonstrate: "(1) [T]hat the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or

substantially certain to result from his conduct." *LaBove v. Raftery*, 00-1394, 00-1493, pp. 16-17 (La.11/28/01), 802 So.2d 566, 577, (quoting *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La.1991)).

We initially note the courts in Louisiana have consistently refused to recognize a cause of action for alienation of affection. *Moulin v. Monteleone,* 165 La. 169, 115 So. 447 (1927); *Greene v. Roy,* 604 So.2d 1359 (La.App. 3 Cir.), *writ denied*, 607 So.2d 544 (La.1992); *Scamardo v. Dunaway*, 94-545 (La.App. 5 Cir. 2/15/95), 650 So.2d 417. In *Scamardo*, the plaintiff husband filed a suit for intentional infliction of emotional distress. Plaintiff alleged that while his wife was being treated by defendant (a specialist in the field of reproductive medicine) for problems associated with infertility, defendant engaged in an adulterous affair with her causing her to abandon him and causing plaintiff's emotional distress. Defendant filed an exception of no cause of action which the trial court sustained. The appellate court, after examining the historical basis for the refusal to recognize a cause of action for alienation of affection, affirmed the trial court:

> In *Moulin v. Monteleone*, 165 La. 169, 115 So. 447 (1927), after an in-depth analysis of the state of the law and societal policies, the Louisiana Supreme Court determined that there is no cause of action in this state for alienation of affection for several reasons. It is still the law in this state. *Butler v. Reeder*, 573 So.2d 1159 (La.App. 5th Cir.1991).
>
> We first note that *Moulin* was written in 1927. Some of the reasons cited by the court have since been modified by positive law or jurisprudence. However, the result is still law and the analysis is pertinent to deciding whether the infliction of emotional distress tort remedy under La.C.C. art. 2315 is distinguishable from the action for alienation of affection or interference with the marital contract.
>
> The first reason, given by the court in *Moulin* for denying the remedy to the plaintiff husband in that case, was that money damages for the alienation of affection is exemplary or punitive in nature and punitive damages were, then as now, not authorized in civil cases (except that now they are authorized in certain legislatively provided instances). *Moulin*, 115 So. at 448-449. Second, the civil law system treats the marriage as a civil contract and damages for interference with

contract was not permitted. *Id*. at 449-450. That proposition has only been modified in a limited fashion in recent years.

In *Moulin*, the court reviewed the history of the claim for alienation of affection. It noted that the concept of alienation of affection arose as a common law remedy, given only to the husband, not the wife or children. Judge O'Neil, the writer, stated that the concept was based on the obsolete idea that a wife was the chattel of the husband. *Id*. at 450.

The third reason given in *Moulin* was that, under the civil law, in the absence of a statute conferring the right, there existed no right of action for the loss of the services, support, companionship or affection of a human being because no one has a property right in the affections of another. *Id*. at 451. Again, this principle has been modified in recent years. The court then analyzed the development of La.C.C. art. 2315, noting that under Roman and Spanish law there was no remedy for alienation of affections. Under Roman and Spanish law, a man who attempted to seduce or corrupt the morals of a woman was answerable in damages to her, but not to her husband or other relations. *Id*. at 451. The court feared that to allow recovery for such an action "might tend more to encourage blackmail, than to protect the home". *Id*. at 457.

In comparing the two theories of recovery, we find that they are distinguishable. Neither the policies nor legal principles giving rise to the claims or framing the rights are the same. Although both have the emotional distress of plaintiff as a primary element of damages, and thus, may appear to overlap, the infliction of emotional distress is a separate, recognizable tort. The law does not limit the action to non-marital situations. *However, the mere seduction and loss of one's spouse due to the seduction or affair cannot be the basis for the action. There must be proof that defendant violated some legal duty to plaintiff,* so that plaintiff is in fact the victim and not just the jilted party. Further, the burden of proof of outrageous conduct is a heavy one. Otherwise, the cause of action is for alienation of affections, which is not legally recognized in this state.

In *Greene v. Roy*, 604 So.2d 1359 (La.App. 3rd Cir.1992), *writ denied* 607 So.2d 544 (La.1992), the Third Circuit was faced with the claim of alienation of affection, coupled with a claim for intentional infliction of emotional distress. The court there determined that the petition failed to allege facts to support the intentional requirement. Notably, it did not hold that there was no cause of action for intentional infliction of emotional distress in all marital cases. Thus, we hold that appellant here does have a cause of action for negligent or intentional infliction of emotional distress.

*Id*. at 420-21 (emphasis added) (footnote omitted).

The appellate court remanded the case to allow the plaintiff an opportunity to amend

his petition to state a valid cause of action. After amendment of the petition, the trial

court again granted defendant's no cause of action; and plaintiff appealed that

decision. The appellate court again affirmed, stating:

> Plaintiff, in his amended petition, failed to meet this burden.
> Plaintiff attempts in the amendment to the petition to state that the
> defendant abused his position of authority with the plaintiff, and
> intentionally inflicted emotional distress upon the plaintiff. His
> allegations however, are still based upon the underlying fact of the
> adulterous relationship between the defendant and plaintiff's ex-wife,
> the same set of facts which we held previously to be insufficient to
> support a claim for intentional or negligent infliction of emotional
> distress.

*Scamardo v. Dunaway, appeal after remand*, 96-1036 (La.App. 5 Cir. 4/29/97), 694

So.2d 1041, *writ denied*, 97-1395 (La.9/5/97), 700 So.2d 517 694 So.2d at 1043.

Clearly, any damages arising from the sexual relationship between Heather and

Judge Miller are not recoverable under Louisiana law. Understandably Michael

experienced emotional distress in this situation, but "the mere seduction and loss of

one's spouse due to the seduction or affair cannot be the basis for the action."

*Scamardo*, 650 So.2d at 420 (emphasis omitted). Although Michael, in addition,

attempts to rest his claim on allegations of bad faith, detrimental reliance, civil fraud

and other general tort law theories, an examination of the facts alleged in the petition

clearly shows the basis of his claims rests on the adulterous relationship between

Judge Miller and his ex-wife.[2] Except for the paternity allegations found in

---

[2] We note, as well, the petition contains allegations which refer to defendant's professional conduct as a lawyer. Although Miller may have violated the Code of Professional Responsibility that governs his conduct as a lawyer, the mere violation of the Code does not give rise to civil liability. The facts alleged in the petition are insufficient to support a claim that an attorney-client relationship ever existed between Michael and Miller. Even if we were to conclude a *de facto* attorney-client relationship existed between Miller and Michael's ex-wife, the Louisiana Supreme Court stated in *Penalber v. Blount*, 550 So.2d 577, 578 (La. 1989) "no cause of action lies in favor of a non-client under theories of malpractice and negligence because the attorney owes no duty to the adversary of his client." In cases where the courts have recognized a cause of action against an attorney in favor of a non-client or a third-party beneficiary under the broad ambit of La.Civ.Code art 2315, they have found the

paragraphs 85 and 86 of the petition,[3] the facts alleged in the petition are insufficient to support a claim for intentional or negligent infliction of emotional distress or any other claim based on the noted alternative theories.

The more difficult issue in this case is whether Defendant violated a legal duty owed to Michael when he knowingly, and in concert with his ex-wife, caused to be filed a petition for the purpose of securing a judgment ordering Michael to provide financial support to a child which Michael was not legally obliged to do if the true facts were known by him and he availed himself of the defenses afforded him by law. Under La.R.S. 9:305, Michael could have filed a suit for disavowal of paternity ancillary to the child support requested by Heather in the divorce proceeding. Louisiana Revised Statute 9:305 provides:

> A. Notwithstanding the provisions of Civil Code Art. 189 and for the sole purpose of determining the proper payor in child support cases, if the husband, or legal father who is presumed to be the father of the

---

attorney knowingly violated a prohibitory law or intentionally engaged in a fraudulent act. *Id.* For reasons we have expressed, Michael's nullity action based on the alleged fraud and ill practices committed by Miller, as a lawyer or a judge, in connection with preparing the divorce pleadings and obtaining the judgment is prescribed. For reasons we will express hereafter, except for the conduct referenced in paragraphs 85 and 86, allegations that Miller intentionally had a sexual relationship with Michael's ex-wife, failed to disclose such, and later divulged it in a telephone conversation are insufficient to constitute legal fraud or a violation of any prohibitory law recognized in this state.

[3] Paragraphs 85 and 86 of the petition read as follows:

85.

Defendant signed the Stipulated Judgment with actual knowledge that by not admitting to plaintiff or otherwise disclosing to plaintiff that defendant might be the biological father of the minor child [A.V.], he was through his silence defrauding the plaintiff.

86.

Defendant in addition to signing the Stipulated Judgment wrongfully granting his . . . divorce granted the plaintiff joint custody of the minor child [A.V.] and cast plaintiff for child support.

child, erroneously believed, because of misrepresentation, fraud, or deception by the mother, that he was the father of the child, then the time for filing suit for disavowal of paternity shall be suspended during the period of such erroneous belief or for ten years, whichever ends first.

B. No provision of this Section shall affect any child support payment or arrears paid, due, or owing prior to the filing of a disavowal action if an order of disavowal is subsequently obtained in such action.

Thus, he would have had a valid defense to the future payment of child support had he been aware he was not the biological father of A.V. *See Gallo v. Gallo*, 03-794 (La. 12/3/03), 861 So.2d 168.

While there is no jurisprudence in Louisiana dealing with the issue of misrepresented paternity, we have found the matter addressed in other states. Not surprisingly, courts have reached conflicting conclusions in deciding whether to allow claims for recovery of child support and emotional distress in such cases.

Several states have held that public policy concerns bar claims based on misrepresented paternity. *Doe v. Doe*, 358 Md. 113, 747 A.2d 617 (2000) (basing its refusal to recognize such a cause of action on the same public policy considerations which led to the abolition of the common law cause of action of criminal conversation); *Nagy v. Nagy*, 210 Cal. App. 3d 1262 (Ct. App. 1989) (holding that "developing a close relationship with a child misrepresented to be [your own] and performing parental acts is not a 'damage' which should be compensable under the law." *Id*. at 1269-70); *Richard P. v. Superior Court*, 202 Cal. App. 3d 1089 (Ct. App. 1988) (stating that some wrongs are "beyond any effective legal remedy and any practical administration of law" and that attempting to remedy them may cause more social damage because "the innocent children . . . may suffer significant harm." *Id*. at 1094).

Conversely, other states have dismissed public policy concerns and recognized claims for misrepresented paternity. The court in *Koelle v Zwiren*, 672 N.E.2d 868

(1996), found that "public policy does not serve to protect people engaging in behavior such as that with which plaintiff's complaint charges defendant, and we will not allow defendant to use her daughter to avoid responsibility for the consequences of her alleged deception." Courts have also stated if public policy required abolishing such torts, then the legislatures can act accordingly. *G.A.W. v. D.M.V.*, 596 N.W.2d 284 (Minn. Ct. App. 1999).

The courts that have found a cause of action for emotional distress exists in misrepresented paternity cases have not based their decisions on a right by the plaintiffs to be compensated for their loss of love and affection. In *Koelle*, 672 N.E.2d 868, the court specifically noted the plaintiff did not seek to be paid for the love and affection he gave the child, but rather sought compensation for the damages he suffered due to fraud and for the pain and anxiety he experienced due to the intentional infliction of emotional distress. In *Bailey v. Searles-Bailey*, 746 N.E.2d 1159 (Ohio 2000), the court held the husband's claim for his anguish suffered upon discovering that his wife and her paramour had concealed the parentage of the child born during his marriage was based upon the emotional distress he sustained in finding out that the child born during his marriage was not his biological child, and not on the fact that his wife was having an adulterous affair.

In *Miller v. Miller*, 956 P.2d 887 (Okla. 1998), the court found the plaintiff had a cause of action against the spouse as well as her parents for knowingly misrepresenting to him that the daughter was pregnant with his child, inducing him to wed her and raise the child. The Ohio appellate court in *Bailey*, 746 N.E.2d 1159, found the plaintiff had a cause of action against *both his ex-wife and paramour* for intentional infliction of emotional distress for the anguish he suffered upon discovering that his wife and her paramour had concealed the parentage of the child

born during his marriage. We are not required at this stage of the proceedings, however, to issue a dispositive ruling on the viability of a claim based on misrepresented paternity in this state for the reasons which follow.

## D. No Right of Action Exception

The facts in the present case differ from all the cases we have reviewed in one notable respect: There has been no paternity test performed to determine who is A.V.'s biological father. Michael alleges that Judge Miller believes he is the biological father of A.V. However, Michael has refused to submit to testing to conclusively establish the paternity of A.V. Without such proof, he has not established his right to bring an action against Judge Miller under any theory of law, except the ones the courts of this state have already rejected. *See Moulin,* 165 La. 169, 115 So. 447; *Greene,* 604 So.2d 1359; *Scamardo*, 650 So.2d 417.

While defendant elected to file only the exception of no cause of action, La.Code Civ.P. art. 927(B) provides this court may recognize a no right of action exception on its own motion. The exception of no right of action and the exception of no cause of action have different functions. As stated by our supreme court in *Babineaux v. Pernie-Bailey Drilling Co.*, 261 La. 1080, 1095-97, 262 So.2d 328, 333-34 (1972):

> There has been much discussion about the purpose of the exception of no right of action, and many attempts to differentiate that exception from the exception of no cause of action. One of the best statements of the definition of no right of action and of the basis of the distinction between it and no cause of action was given by the late Henry George McMahon: "The former (no cause of action) is used to raise the issue as to whether the law affords a remedy to anyone for the particular grievance alleged by plaintiff; the latter [no right of action] is employed (in cases where the law affords a remedy) to raise the question as to whether plaintiff belongs to the particular class in whose exclusive favor the law extends the remedy, or to raise the issue as to whether plaintiff has the right to invoke a remedy which the law extends only conditionally." McMahon, The Exception of No Cause of Action in Louisiana, 9 Tul.L.Rev. 17, 29-30. See also McMahon, Parties

Litigant in Louisiana, 11 Tul.L.Rev. 529-30. . . .

In *Bielkiewicz v. Rudisill*, 201 So.2d 136 (La.App. 3rd Cir.1967), Mr. Justice Tate of our court, then writing for the Court of Appeal, correctly stated the purpose of the exception of no right of action:

"The want of interest raised by the exception relates primarily to whether the particular plaintiff falls as a matter of law within the general class in whose favor the Law grants the cause of action sought to be asserted by the suit, with the factual evidence admissible being restricted as to whether this particular plaintiff does or does not fall within the general class having legal interest to sue upon the cause of action asserted. * * *

"In short, the objection of no right of action raises the question of whether the plaintiff has a legal interest in the subject matter of the litigation, *assuming (for the purpose of deciding the exception)* that a valid cause of action is pleaded by the petition. *LeSage v. Union Producing Co.*, 249 La. 42, 184 So.2d 727."

The pleadings do not establish that Michael has the right to assert a claim for intentional or negligent infliction of emotional distress based on misrepresented paternity, even assuming the existence of such a claim in this state. However, La.Code Civ.P. art. 931 provides evidence may be offered to establish a right of action when the grounds thereof do not appear in the petition. Merely alleging facts which place A.V.'s paternity in question is insufficient to establish Michael's status to proceed.

Therefore, in the interests of justice, we remand this case to the trial court for an evidentiary hearing to afford Michael a reasonable opportunity to establish whether or not he is the biological father of A.V. or that the child is in fact the natural offspring of Judge Miller. *See Babineaux*, 261 La. 1080, 262 So.2d 328.[4]

Should he elect not to move forward with such proof, the trial court is hereby instructed to recognize and dismiss Michael's petition based on his failure to state a

---

[4] In *Babineaux*, 262 So.2d 328, 337, the court remanded the case to determine the filiation of a child, finding it could "make no final determination of his status on the record before us."

right of action.

## DECREE

For the foregoing reasons, we reverse the portion of the trial court's judgment granting defendant's exception of no cause of action under the judicial immunity doctrine for all acts/omissions during the period he was a city court judge and a private legal practitioner. We remand this case to the trial court for an evidentiary hearing on the issue of A.V.'s paternity as instructed above. We pretermit assessment of costs of this appeal, pending the outcome of further proceedings consistent with this opinion. *See Bourgeois v. Wiley*, 02-1420 (La.App. 1 Cir. 5/9/03), 849 So.2d 632.

**AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED WITH INSTRUCTIONS.**